UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BDH, LLC,

        Plaintiff,

  v.

OUTDOOR PRODUCT INNOVATIONS, INC.,
and DANIEL REASER, SR.,

        Defendants/Counterclaim Plaintiffs,

  v.

PATRICK MCINTYRE,
MICHAEL COAKLEY
and A C.H. COAKLEY & CO., INC.,

        Counterclaim Defendants.

Case No. 21-cv-770-pp

---

## ORDER DENYING OUTDOOR PRODUCT INNOVATIONS, INC.'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM (DKT. NO. 55)

---

At the June 27, 2024 motion hearing, the court addressed the parties' pending motions, including Outdoor Product Innovations' (OPI) motion for leave to amend its counterclaim (Dkt. No. 55). Dkt. Nos. 127, 128. The court resolved the motion to amend as to proposed Counts One through Four, but deferred ruling on the proposal to add Counts Five through Eight arising from BDH's alleged sale of Outdoor Product Innovations' proprietary RHINO blinds. Dkt. No. 127 at 49:22-50:28. The court heard argument from the parties regarding whether OPI has standing to add these counterclaims given that in 2022, OPI sold its assets—including intellectual property—to a third-party, FeraDyne

1

Outdoors. Id. at 50:35-1:37:28. Having reviewed the parties' arguments and the record as it relates to this motion, the court will deny the defendants' request to amend the counterclaim to add Counts Five through Eight.

I.     **Motion to Amend/Correct Counterclaim (Dkt. No. 55)**

   A.     Legal Standard

At the June 27 hearing, the court declined the plaintiff's request that it hold OPI to a heightened good cause standard when reviewing the motion to amend. Dkt. No. 127 at 51:27-52:38. This is not a case where the parties jointly proposed a deadline for amending or agreed that there would be no further amendments. See Arrigo v. Link, 836 F.3d 787, 797 (7th Cir. 2016) (applying the heightened good cause standard where the parties said they did not anticipate amending their pleadings and made a litigation decision to pursue claims in another forum). The parties reserved "their rights to seek leave of the court to file an amended pleading or join additional parties if a need to do so should arise." Dkt. No. 33 at 5.

Because the court is not holding OPI to a heightened good cause standard, the "court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." Zimmerman v. Bornick, 25 F.4th 491, 494 (7th Cir. 2022) (citations omitted). By way of example, leave to amend may be unwarranted when (1) "a proposed amendment is untimely," (2) "the plaintiff has already had multiple chances to cure deficiencies," or (3) "amendment would cause substantial delay and prejudice." Id. (citations omitted).

B. <u>Arguments</u>

BDH filed this case on June 22, 2021, dkt. no. 1; OPI filed its counterclaim on October 14, 2021, dkt. no. 15. OPI waited almost two years to file the motion to amend its counterclaim. Dkt. No. 56. OPI argues that "during the protracted written discovery process in this case, substantial evidence has surfaced in discovery" that warrants the court granting leave to amend. <u>Id.</u> at 2. When OPI filed the motion to amend in September 2023, discovery remained ongoing, dkt. no. 56 at 6, but the deadline for completing it was only four months away, dkt. no. 46 (extending deadline for completing discovery to January 19, 2024).

OPI argues that discovery produced documents that "had not previously been" in its possession, and that these documents "serve as additional evidentiary support underpinning th[e] Motion and the proposed Amended Counterclaim filed herewith." Dkt. No. 56 at 7. It asserts that "with the benefit of the discovery that has been had in this case, OPI is now able to, and has, plead its fraud allegations with a great amount of detail, including material which was previously unavailable to OPI until discovered through this litigation." <u>Id.</u> It says that the discovery has "uncovered evidence supporting additional claims" for breach of contract, unfair competition, tortious interference "(related to the RHINO Blinds issues)," federal trademark violations and federal unfair competition. <u>Id.</u> According to OPI, the "extent and severity of Sellers' unlawful actions did not come to light until the supplemental document productions made by Seller over the Summer of 2023." <u>Id.</u> at 10

3

(citing Dkt. No. 57 at ¶21). OPI says that the trademark and unfair competition claims were not "fully realized" until these documents were produced. Dkt. No. 56 at 11.

The counterclaim defendants oppose the proposed amendment, arguing that OPI has known about the alleged "new" evidence since December 2019. Dkt. No. 67 at 14. They point out that OPI never identified the "new" documents or explained where they discovered them. Id. at 15. They argue that the proposed amended counterclaim "significantly expands the scope of the litigation" and takes it in new directions. Id. at 8, 16. Finally, they say that OPI lacks standing to bring Counts Five through Eight of the proposed amended counterclaim—relating to the sale of the RHINO blinds—because OPI sold its assets to FeraDyne on October 24, 2022, and, as part of the acquisition, OPI assigned its intellectual property rights to the RHINO marks. Id. at 10.

In reply, OPI admits that it had asserted in its original counterclaim that in December 2019 and March of 2020, it had "learned that, in 2019, BDH had purchased in China . . . some quantity of RHINO Blinds, which were a proprietary product of OPI covered by U.S. trademarks, and that BDH had sold those RHINO Blinds in violation of OPI[']s intellectual property rights." Dkt. No. 77 at 9 (citing Dkt. No. 15 at ¶50. OPI even alleged that BDH had "illegally sold thousands of RHINO Blinds at unreasonably low prices, and that, by 'dumping' this excess inventory on the market at such low prices, had caused OPI to adjust its price of the RHINO Blinds downward, causing OPI lost profits." Dkt. No. 15 at ¶72. OPI argues, however, that "while OPI was aware that Plaintiffs

4

had acquired and re-sold some RHINO Blinds from China, OPI did not know details about the circumstances under which the blinds were purchased and resold—such as the packaging when the items were purchased, whether the packaging was changed, and the extent to which Plaintiffs intended to manipulate the e-commerce algorithms." Dkt. No. 77 at 7.

As for the argument that OPI no longer has standing to raise the intellectual property claims, OPI maintains that it expressly retained the right to sue and recover damages related to this case, specifically the trademark claims. Id. at 14 (citing Dkt. No. 55-1 at ¶256). It asserts that this allegation is "entirely consistent" with section 2 of its intellectual property assignment. Id. (citing Dkt. No. 68-4 at 1-2).

C.   Analysis

As an initial matter, the court finds that there has been undue delay in bringing the motion. "The issue of undue delay generally arises when a plaintiff seeks leave to amend deep into the litigation." McCoy v. Iberdrola Renewables, Inc., 760 F.3d 674, 687 (7th Cir. 2014).

OPI moved to amend two years into the litigation and four months before the discovery deadline. OPI offers an excuse for the delay, saying that it only learned of the additional information through a late production of discovery, But OPI hasn't identified information that is "new" to OPI. OPI pled the underlying facts of these counterclaims as early as October 14, 2021. At paragraph fifty of the original counterclaim, OPI asserted that BDH had purchased from China, "some quantity of RHINO Blinds, which were a

5

proprietary product of OPI covered by U.S. trademarks, and that BDH had sold those RHINO Blinds in violation of OPIs intellectual property rights, since OPI had not licensed or authorized BDH to sell RHINO Blinds." Dkt. No. 15 at ¶50. OPI alleged in its original counterclaim that it "learned after executing the [asset purchase agreement] that, contrary to Mr. McIntyre's earlier assertions . . . BDH had, in fact, illegally sold thousands of RHINO Blinds at unreasonably low prices, and that, by 'dumping' this excess inventory on the market at such low prices, had caused OPI to adjust its price of the RHINO Blinds downward, causing OPI lost profits." Id. at ¶72. OPI even cited "BDH's unauthorized sales of RHINO Blinds" in response to discovery requests in July of 2022. Dkt. No. 67 at 7. As best the court can tell, the late discovery responses cited by OPI shed light on the extent of BDH's activity with respect to the RHINO blinds but, as OPI admitted in its reply brief, OPI already knew that the counterclaim defendants had "acquired and resold some RHINO Blinds from China." Dkt. No. 77 at 7.

The court has compared the allegations in the original counterclaim to the proposed amended counterclaim:

Counterclaim, Dkt. No. 15:

50. In addition, during the course of negotiations between December 2019 and March 2020, OPI learned that, in 2019, BDH had purchased in China from the same source that made the BDH tree stands, some quantity of RHINO Blinds, which were a proprietary product of OPI covered by U.S. trademarks, and that BDH had sold those RHINO Blinds in violation of OPIs intellectual property rights, since OPI had not licensed or authorized BDH to sell RHINO Blinds.

51. When this came up in the negotiations, Mr. McIntyre, on behalf of himself, Mr. Coakley, BDH, and Coakley, Inc., between December

6

2019 and March 2020, falsely stated to OPI that BDH had only sold a small quantity of the RHINO Blinds, in an attempt to minimize the issue and keep OPI involved in negotiating the sale of BDH's inventory and rights to OPI.

72. OPI further learned after executing the APA that, contrary to Mr. McIntyre's earlier assertions that BDH had merely sold just a small amount of RHINO Blinds it was not legally allowed to sell, BDH had, in fact, illegally sold thousands of RHINO Blinds at unreasonably low prices, and that, by "dumping" this excess inventory on the market at such low prices, had caused OPI to adjust its price of the RHINO Blinds downward, causing OPI lost profits.

<u>Proposed Amended Counterclaim</u>, Dkt. No. 55-1:

6. Specifically, in 2019, Mr. McIntyre informed Mr. Reaser that while he—unlawfully and without OPI's permission—purchased and sold 556 units of R200 RHINO Blinds, he was not the unscrupulous seller who misappropriated thousands of OPI's RHINO Blinds and dumped them onto the market at fire-sale prices, which caused OPI to suffer considerable economic damage.

7. To support his narrative and to induce Mr. Reaser to trust him, Mr. McIntyre provided Mr. Reaser with a shipping container document, which corroborated the purchase of 556 units of RHINO Blinds.

8. However, documents uncovered in discovery paint a vastly different picture than what Mr. McIntrye represented and provided to Mr. Reaser.

9. The original and unaltered version of the shipping document, obtained in third-party discovery in this case, shows that the shipping container on which Mr. McIntyre had received the RHINO Blinds actually contained 1,085 of the R200 RHINO Blinds, not merely 556. Further, the container also included 68 of the R50 RHINO Blinds, 90 of the R100 RHINO Blinds, 1085 of the R200 RHINO Blinds, 80 of the R500 RHINO Blinds, and 233 of the R600 RHINO Blinds.

10. Indeed, Mr. McIntyre was, contrary to his representations, the unscrupulous seller who engaged in unfair competition through misappropriation when he unlawfully obtained and sold thousands of RHINO Blinds on the market, and tortiously interfered with Defendants' contractual and business relationships.

7

49. Through those efforts, Mr. Reaser got a lead that Mr. McIntyre may have been someone who had dumped some of the RHINO Blinds on the market.

50. Accordingly, on December 3, 2019, Mr. Reaser emailed Mr. McIntyre, stating "Hi Pat, Can you give me a call?"

51. That same day, Mr. Reaser and Mr. McIntyre had a phone call, during which Mr. Reaser accused Mr. McIntyre of dumping a substantial number of RHINO Blinds on the market.

52. On that phone call, Mr. McIntyre admitted to selling some RHINO Blinds, but he said that the sales were only of a few hundred RHINO Blinds, not the thousands that caused the market damage to OPI.

53. Mr. McIntyre explained that he had purchased just a few hundred RHINO Blinds while he was physically present at a factory in China. Apparently, during a factory visit in or around April 17, 2019, Mr. McIntyre noticed several rows of boxed RHINO Blinds on pallets awaiting shipment and expressed his interest in buying the inventory at a discount.

54. During the call with Mr. Reaser, Mr. McIntyre conceded that what he did was wrong, and he pleaded with Mr. Reaser not to pursue any claims against Mr. McIntyre for the unauthorized sales of RHINO Blinds.

55. Mr. McIntyre then tried to turn the conversation, stating in a conciliatory manner, something like "why don't you just buy us out as a way to resolve this?"

Although it subsequently learned the precise number of units sold and the extent of McIntyre's involvement, OPI knew in 2021 that McIntyre had made false representations and that BDH had purchased and sold OPI's blinds, dumped them on the market and caused OPI to incur a financial loss. The additional allegations in the proposed amended counterclaim about the conversation between McIntyre and Reaser involve Reaser—OPI's *principal*. The information about that conversation obviously was within OPI's possession—

within *Reaser's* possession—in 2019. OPI appears to have made a strategic decision about how to plead its counterclaim, then—years later—decided to revisit its approach.

The court also finds that the amendment would cause undue prejudice to BDH. An amendment may be prejudicial when it would require the parties to engage in substantially more discovery. See Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 855 (7th Cir. 2017). OPI argues that there is no prejudice because BDH knew of the underlying factual allegations. But at the time OPI sought to amend, BDH was proceeding with discovery on the four counts pled in the original counterclaim. The proposed amended counterclaim significantly expands the scope of the litigation by taking the counterclaim from twenty-three pages (136 allegations) to eighty pages (421 allegations). Compare Dkt. No. 15 with Dkt No. 55-1. With the amendment, the plaintiff proposes to add four new legal theories. The proposed additions of Counts Five through Eight transform a contract dispute arising out of the 2020 asset purchase agreement between BDH and OPI into a case about BDH's alleged sale of RHINO blinds bearing OPI's mark to third parties a year *before* the parties' asset purchase agreement. The court would be required to reopen discovery to allow discovery relating to claims of unfair competition under state and federal law, federal trademark infringement and tortious interference arising out of the "dumping" of the blinds in the market. At this point, the discovery and expert witness deadlines have passed. The parties have briefed OPI's pending motion for partial summary judgment.

It is within the court's discretion to deny the motion to amend on the grounds of undue delay and prejudice. The court has one additional concern: futility. OPI must have a personal stake in the proposed counterclaims. See TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). Standing, which is jurisdictional, cannot be waived. Nettles v. Midland Funding LLC, 983 F.3d 896, 899 (7th Cir. 2020). BDH cites the 2022 intellectual property assignment between OPI and FeraDyne in which OPI appears to have transferred its intellectual property—including the RHINO mark. OPI bears the burden of establishing standing for each claim that it brings, Johnson v. Office of Pers. Mgmt., 783 F.3d 655, 661 (7th Cir. 2015), and each standing element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "The manner and degree of evidence required" to establish standing to bring a claim tracks the usual burdens imposed on parties "at the successive stages of litigation." Id.

The Intellectual Property Assignment between OPI and FeraDyne covers the RHINO trademark. Dkt. No. 68-4 at 4. The relevant paragraph states:

> 1. Assignment. Assignors hereby sell, transfer, assign, convey, and deliver unto Assignee, and Assignee hereby acquires and accepts, all of Assignors' right, title, and interest worldwide in and to the Transferred Intellectual Property set forth on Exhibit A, free and clear of all Liens, together with (a) all goodwill associated therewith; (b) all benefits, privileges and rights of priority therein in any jurisdiction of the world as may now or hereafter be granted to it by law, treaty, or other international convention, including all rights to apply for and maintain registrations and renewals of the Transferred Intellectual Property; and (c) all rights interests, claims, and demands recoverable in law or in equity that Assignors or their Affiliates have or may have in profits and damages for past, present,

10

and future infringements, misappropriations or other violations thereof, including but not limited to the right to compromise, sue for, and collect said profits and damages.

Id. The trademark assignment cover sheet filed with the USPTO lists the RHINO mark as part of the assignment (registration numbers 5736725 and '726). Id. at 1.

The assignment includes language regarding inconsistent or conflicting provisions, making clear that the assignment shall not in any way "supersede, modify, replace, amend, change, rescind, waive, exceed, expand, enlarge or in any way affect the provisions, including the warranties, covenants, agreements, conditions, representations or, in general, any of the rights and remedies, or any of the obligations of the parties to the Purchase Agreement as set forth in the Purchase Agreement . . . ." Dkt. No. 68-4 at 4-5. OPI reads this language to say that the asset purchase agreement between the parties "controls over any contradictory language in the Intellectual Property Assignment," dkt. no. 77 at 14, but OPI does not identify any contradictory language in the asset purchase agreement specifically referring to the RHINO Blinds mark as a counterclaim in this litigation.

OPI insists that it is sufficient that it has alleged that it retained the rights to litigate the mark. Dkt. No. 77 at 15. OPI cites paragraph 256 of the proposed amended counterclaim, id., which alleges that "[a]lthough OPI has since assigned certain rights in the RHINO Trademarks to a third party, OPI expressly retained the right to sue for and recover damages related to the

11

infringement alleged herein, including specifically the trademark counterclaims alleged against Sellers," dkt. no. 55-1 at ¶256.

At the June 27, 2024 motion hearing, the court gave OPI the opportunity to highlight the language where OPI expressly retained the rights to pursue claims arising from BDH's alleged sales of OPI's RHINO blinds. OPI cited the asset purchase agreement between OPI and FeraDyne, which contains the following language regarding the litigation in this district:

<u>Schedule 2.9</u>

<u>BDH, LLC v Outdoor Product Innovations, Inc. and Daniel B. Reaser, Sr.</u>

This is a contract dispute between the owners of Big Dog Hunting (BDH) and OPI and Daniel B. Reaser, Sr. This lawsuit relates to the Asset Purchase Agreement dated March 31, 2021 by and between OPI as Purchaser and Big Dog Hunting LLC as Seller for the assets used in the tree stand business. Pursuant to that APA, Big Dog Hunting LLC is now BDH LLC. The parties are in dispute over performance of the terms of the APA and OPI has filed a counterclaim regarding BDH's failure to perform to the terms and for damages for BDH's breach of representations and warranties. The case is in the discovery phase. Anticipating mediation and settlement of the dispute. This liability, including all rights and claims of OPI as counterclaims against BDH, will remain with Sellers. Sellers and Owners will indemnify Purchaser up to $2.5 million of the Note.

Dkt. 72-4 at 149. Schedules 1.2(b)-1.4(i) list the *assets* excluded from the sale to FeraDyne, but the schedules do not refer to future counterclaims involving the RHINO marks. <u>Id.</u> at 100-102. Schedule 1.4(g) lists excluded *liabilities*, specifically "All obligations with respect to any Claims and counterclaims in the legal matter BDH, LLC v. Outdoor Product Innovations, Inc., Daniel B. Reaser,

12

Sr., Patrick McIntyre, Michale Coakley, and A CH Coakley 7 Co., Inc. set for the on Schedule 2.9" (quoted above). Id. at 103.

OPI's attorney argued at the June 27 hearing that the language in Schedule 2.9 reserving "all rights and claims of OPI as counterclaims against BDH" applies to any *future* counterclaims that had not been pled at the time of drafting the agreement. Counsel simultaneously admitted, however, that he did not draft the language in the asset purchase agreement and that it was someone else's description of the case. He conceded that his understanding of the language in the asset purchase agreement could be challenged on summary judgment (and that OPI "might not win."). Dkt. No. 127 at 1:20:27-1:21:17.

In the end, despite its concerns, the court is not basing its decision to deny the motion to amend on futility, because of the ambiguities in these provisions. The court is denying the motion because of undue delay and prejudice. Waiting two years to seek leave to amend is a significant delay, particularly when discovery was scheduled to close within months and the information supporting the proposed amendments had been in OPI's possession as early as 2019. Opening the door to intellectual property claims would significantly expand the litigation and cause further delay.

By separate order, the court will address OPI's pending summary judgment motion, dkt. no. 96, and motion to exclude Bret A. Roge as an expert, dkt. no. 121.

13

## II. Conclusion

The court **DENIES** the defendants' motion to amend/correct counterclaim to the extent the defendants seek to add Counts Five through Eight. Dkt. No. 55. The court's prior rulings regarding proposed Counts One through Four stand.

During the June 27, 2024, hearing, the court suspended all deadlines at the parties' request pending the issuance of this order. Dkt. No. 128 at 2:28:50-2:29-08. The court **ORDERS** the parties to file a joint status report by the end of the day on **September 27, 2024**, addressing the deadline for dispositive motions and outlining their proposed next steps. Once the court receives the report and any additional motions, the court will determine whether a hearing is necessary on the remaining motions.

Dated in Milwaukee, Wisconsin this 14th day of August, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
