UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BDH, LLC,

        Plaintiff,

  v.

Case No. 21-cv-770-pp

DBR FINANCE, INC.
(*f/k/a Outdoor Product Innovations, Inc.*)
and DANIEL REASER, SR.,

        Defendants,

  v.

PATRICK MCINTYRE, MICHAEL COAKLEY
and A CH COAKLEY & CO., INC.,

        Counterclaim Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY (DKT. NO. 121)**

---

      The defendants have filed a motion under Rule 702 to exclude the report and testimony of Attorney Bret A. Roge, designated by the plaintiff and the counterclaim defendants as an expert witness. Dkt. No. 121. The defendants have not argued that Roge isn't qualified or that his testimony is not reliable; they argue that his report contains improper legal conclusions and is otherwise irrelevant. Dkt. No. 122 at 2. Under <u>Daubert</u> and Federal Rule of Evidence 702, the court finds that the majority of Roge's testimony is admissible, with one exception.

1

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), govern the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." The party seeking to introduce the testimony must establish that it is more likely than not that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," that "the testimony is based on sufficient facts or data," that "the testimony is the product of reliable principles and methods" and that "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The court acts as a gatekeeper to ensure that the testimony rests on a reliable foundation and is relevant to the task at hand. Kirk v. Clark Equip. Co., 991 F.3d 865, 872 (7th Cir. 2021) (quoting Daubert, 509 U.S. at 589).

In its gatekeeper role, the court engages in a three-step analysis before admitting expert testimony. Gopalratnam v. Hewlett-Packard Co., 877 F.3d 771, 779 (7th Cir. 2017)).  The court considers (1) whether the proffered expert is qualified; (2) whether the expert's "methodology is scientifically reliable;" and (3) "whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue."" Id. (quoting Myers v. Ill. Cent. R.R. Co., 629 F.3d 639, 644 (7th Cir. 2010)). As the Seventh Circuit has phrased it, the court must consider the proffered expert's qualifications, the reliability of the expert's methodology and the relevance of the expert's testimony. Id.

2

A. Parties' Arguments

   1. *Defendants' Brief (Dkt. No. 122)*

The defendants argue that sections 1-7 of Roge's report fail to mention anything related to this case. Dkt. No. 122 at 4. They assert that section 8 "draws impermissible legal conclusions, opines on [defendant] OPI's alleged rights to rescind the APA [Asset Purchase Agreement], asserts that OPI has a legal duty to pay for [the plaintiff's] assets, and contains otherwise irrelevant opinions." Id. at 2. Finally, they assert that Section 9 is "nothing more than an inappropriate short summary of the report." Id. at 16.

The crux of the defendants' argument focuses on Section 8. The defendants say that Section 8.1, titled "The Parties' Asset Purchase Agreement," simply restates provisions of the APA and summarizes deposition testimony. Id. at 11. They argue that 8.2 simply recounts the procedural history between the parties and contains an irrelevant opinion about the promissory note. Id. at 7, 12. They assert that the only "opinion" in Section 8.2 is buried in Roge's statement that he has "never experienced the closing of a sale of corporate assets where the Buyer did not deliver the executed promissory note" and that this "fundamental precept of [mergers and acquisitions] practice" was not followed. Id. at 12.

Finally, the defendants argue that Section 8.3 draws impermissible legal conclusions related to the transaction in this case and portions of it invade the court's responsibility to instruct the jury on the law. Id. at 6. They maintain that in the final paragraphs of that section, Roge opines that OPI had the right

3

to rescind legal rights and remedies beyond those articulated in the APA. Id. at 8-9, Dkt. No. 123-1 at 19-20. They argue that Roge concludes that OPI "ratified" its obligation through its actions, which the defendants argue is an impermissible legal conclusion. Dkt. No. 122 at 9. The defendants say that, under similar circumstances, the Seventh Circuit has held that otherwise qualified attorneys should help counsel write briefs rather than offering expert opinion. Id. at 10 (citing RLJCS Enters. v. Prof'l Ben. Tr. Multiple Emplr. Welfare Ben. Plan & Tr., 487 F.3d 494, 498 (7th Cir. 2007)). The defendants further argue that, in Section 8.3, Roge draws inferences from deposition testimony and that the jury should hear the testimony firsthand at trial and draw for themselves any resulting inferences. Id. at 13.

        2.     *Plaintiff and Counterclaim Defendants' Opposition (Dkt. No. 124)*

The plaintiff/counterclaim defendants assert that they have proffered Roge's to educate the jury on asset purchase transactions, including best practices of mergers and acquisitions, and to provide context by explaining the phases of an acquisition from initial interest to closing. Dkt. No. 124 at 1, 4. They assert that Roge, who has worked for the Micheal Best & Friedrich law firm in the transactional group since 1989, will testify about how these transactions commonly are handled and how OPI's post-acquisition conduct was "not reconcilable with best practices in the M&A industry." Id. at 1-2. They explain that the defendants did not depose Roge and suggest that the defendants' recourse is to cross-examine Roge at trial rather than to ask the court to exclude him. Id. at 2.

According to the plaintiff/counterclaim defendants, if Roge *does* address legal topics, he does so in the context of arguments raised by OPI. Id. at 8. They insist that Roge does not offer a legal opinion as to whether the plaintiff committed material breaches of the APA or whether OPI had a right to rescind but rather "notes that the rights in the APA do not supersede any right of recession OPI might have." Id. They say that Roge "does not opine" on the merits of OPI's argument about material breach or on OPI's claim for rescission; "[t]o the contrary, he explains that "[a] Buyer's right to rescind would nonetheless remain a viable option *under appropriate circumstances."* Id. at 9 (citing dkt. no. 123-1 at 20) (emphasis in the original). As for Roge's suggestion that the dispute easily could have been avoided had OPI rescinded, the plaintiff/counterclaim defendants argue that Roge merely juxtaposes OPI's conduct against best practices and concludes that if OPI's justifications were accurate, it would have been easier to unwind the transaction. Id.

Citing James Hamlin & Co. PC v. Czarnecki & Shlenker, LLC, 567 F. Supp. 3d 1040 (E.D. Wis. 2021), the plaintiff/counterclaim defendants argue that in that case, this court denied a motion to exclude the expert testimony of an accountant where the parties' actions following an acquisition allegedly caused a decline in revenue. Id. at 12-13. The plaintiff/counterclaim defendants also cite a case from the Central District of Illinois where an expert was permitted to testify about the defendant's lawyer's involvement in a business transaction. Id. at 13 (citing Cox as Tr. for Est. of Cent. Ill. Energy Coop v. Evans, 457 F. Supp. 3d 634 (C.D. Ill. 2020)).

As for the specific sections of Roge's report, the plaintiff/counterclaim defendants argue that Section 8.1 "explains that the structure of the APA generally aligns with the common practice in the M&A Industry." Id. at 14. They maintain that Section 8.2 "discusses OPI's failure to deliver the Note at closing" despite having confirmed that the parties had a deal and making payments under the schedule, which Roge says departs from standard practice. Id. They assert that Section 8.3 addresses "the parties' post-closing dispute in light of standard M&A practice." Id. The plaintiff/counterclaim defendants argue that the defendants offer no authority for the proposition that an expert cannot comment on the facts and contend that the defendants' concerns go to the weight, rather than the admissibility, of the testimony. Id. at 17-19.

3.  *Defendants' Reply (Dkt. No. 125)*

The defendants reply that in Section 8.3, Roge does not explain how OPI departed from standard practices and best practices, instead "impermissibly and erroneously" opining that (1) OPI could have rescinded the transaction; (2) the dispute could have been easily avoided had OPI rescinded; and (3) OPI ratified its obligation. Dkt. No. 125 at 3. They argue that Roge does not mention of standard industry practices, instead drawing conclusions directly related to the outcome of the case. Id. In the defendants' view, Roge is not analyzing the facts of the relevant transaction but is applying his own experience in other transactions without engaging with the facts. Id. at 5. The defendants say that unless the other transactions had the "same parties,

6

participants, negotiations, contracts, developments or set of facts," Roge's opinions are irrelevant. Id. at 6. They suggest that Roge's report "does nothing more than point out that the deal fell apart and, devoid of any analysis as to why, would plant an insidious seed in the mind of the jury that OPI is to blame for the issues arising post-closing." Id. The defendants suggest that because Roge says the APA in this case is a "fairly standard, basic acquisition agreement," his testimony is unnecessary. Id. at 7.

B. Analysis

Again—the defendants are not challenging Roge's qualifications or the reliability of his opinion. The motion challenges the relevance of his testimony and asserts that he impermissibly draws legal conclusions.

The court finds that Roge is qualified, that his specialized knowledge will assist the jury and that he may testify as to common protocol and best practices with respect to asset purchase agreements. Roge possesses knowledge on the topic beyond the understanding of the average person. Sections 1 through 7 of his report provide his qualifications, describe basic acquisition structures and provide a basic understanding of the types of acquisitions and the steps that the parties take from the initial non-disclosure through the closing. His testimony in Section 8 is specific to this case; there, he describes various ways in which the conduct surrounding the APA in this case deviated from best practices. That testimony is appropriate. The defendants assert that the asset purchase agreement in this case is straightforward, but

the number of docket entries since the last hearing suggest otherwise. A jury will benefit from the information that Roge intends to provide.

That said, there is a fine line between Roge's opinions that will help the trier of fact understand how asset purchase agreements are created and how they work, and his opinions on *legal* issues that will determine the outcome of the case. See Roundy's Inc. v. N.L.R.B., 674 F.3d 638, 648 (7th Cir. 2012) (upholding decision not to allow testimony on Wisconsin property law because it amounted to analysis and not expert testimony). The court is particularly concerned with the following opinions in Section 8.3:

> A Buyer's right to rescind would nonetheless remain a viable option under appropriate circumstances. In fact, taking OPI's contentions at face value, this dispute could have been easily avoided had OPI taken this step because at the time it claims to have learned of the alleged breaches committed by [the plaintiff] that would arguably allow a Buyer to vitiate the transaction, OPI: (a) had only remitted $10.00 of the APA's purchase price; (b) failed to deliver the Note; and (c) never took physical possession of the Unsold Inventory, which remained in [the plaintiff's] warehouse in Milwaukee. Here, however, I am informed that OPI kept selling the Unsold Inventory and remitting certain payments to [the plaintiff], but still failed to deliver the Note, which ratifies its obligation to pay for [the plaintiff's] assets.

Dkt. No. 123-1 at 20. In the first sentence, Roge couches his opinion with the phrase "under appropriate circumstances." Then he speculates that the "dispute could have been easily avoided" based on his review of the case filings and he concludes that OPI "ratified" its obligation to pay for the assets by continuing to sell the unsold inventory and remitting certain payments. In this language, Roge is not testifying about standards and best practices—he is offering his opinion on the alleged breach. This testimony would intrude on the

8

jury's role as factfinder and could mislead the jury into substituting Roge's assessment for its own assessment.

The court will permit Roge to testify about what an asset purchase transaction is and best practices relating to mergers and acquisitions—the information he provides in Sections 3 through 7 of his report.[1] Although the defendants argue that the asset purchase agreement at issue in this case is "straightforward" and requires no such education, the sheer volume of documents the parties have filed and their widely divergent theories of the case suggest that it is anything but straightforward; Roge's testimony will give the jury context in which to understand and evaluate those theories. The court also will allow Roge to testify about how conduct in this case may have deviated from what he typically sees in the "M&A world." But the court will *not* allow Roge to draw legal conclusions about whether OPI ratified the agreement.

The court's ruling is limited to the analysis under Rule 702 and Daubert of whether Roge is qualified to testify as an expert, whether his methodology is sound and whether his testimony is relevant. Several of the defendants' arguments go to the weight a factfinder should assign to Roge's testimony, rather than to its admissibility. Just as they may with every other witness, the defendants will have the opportunity to cross-examine Roge, and the parties will have the opportunity to argue to the jury regarding the weight each believes the jury should assign to Roge's testimony.

---

[1] And, of course, he may testify regarding his background and qualifications, which he provides in Sections 1-2.

The court **GRANTS IN PART** the defendants' motion to exclude the expert report and testimony of Bret A. Roge. Dkt. No. 121. The court **DENIES** the motion as to all of Roge's testimony except any legal conclusions about whether OPI ratified the asset purchase agreement.

Dated in Milwaukee, Wisconsin this 25th day of March, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

10

Case 2:21-cv-00770-PP   Filed 03/25/25   Page 10 of 10   Document 185