UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BDH, LLC,

        Plaintiff,

                                     Case No. 21-cv-770-pp

   v.

DBR FINANCE, INC.
(*f/k/a Outdoor Product Innovations, Inc.*)
and DANIEL REASER, SR.,

        Defendants,

   v.

PATRICK MCINTYRE, MICHAEL COAKLEY
and A CH COAKLEY & CO., INC.,

        Counterclaim Defendants.

---

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT (DKT. NO. 96), DENYING WITHOUT
PREJUDICE PLAINTIFF AND COUNTERCLAIM DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT (DKT. NO. 146), DENYING DEFENDANTS'
UNOPPOSED MOTION FOR LEAVE TO FILE SUR-REPLY (DKT. NO. 183),
ORDERING PARTIES TO MEET AND CONFER AND SETTING STATUS
CONFERENCE**

---

Five years ago, the plaintiff decided to sell its assets to defendant

Outdoor Product Innovations, Inc. (OPI) in an Asset Purchase Agreement (APA).

Each party contends that the other breached the APA. The defendants assert

that the plaintiff "doctored documents to misrepresent facts to OPI,"

"misrepresented rights they had to their products and failed to disclose patent

infringement claims," "inflated the values of their products in their accounting

1

records" and "systematically defrauded U.S. Customs to avoid paying tariffs" while telling OPI it complied with the law. Dkt. No. 170 at 1-2. The plaintiff asserts that OPI purchased its assets for $10 up front, withheld a signification portion of its net collections, never paid a dime in royalties, leveraged the plaintiff's Chinese connections, turned a massive profit and sold its assets (along with the plaintiff's assets) for millions. Dkt. No. 175 at 2. Although they don't agree on much, the parties each believe that they are entitled to partial summary judgment.

The parties' briefing on the summary judgment motions does not comply with the court's local rules. The court will deny without prejudice both motions for summary judgment, as well as the defendants' motion to file a sur-reply brief. The court will require the parties to appear for a status conference, *after* they have met and conferred.

## I. Defendants' Motion for Partial Summary Judgment (Dkt. No. 96)

### A. The Parties' Arguments

Last year, the defendants filed a motion for partial summary judgment asking the court to "grant summary judgment to OPI on [the plaintiff's] breach of contract claims in Counts II and III of the Amended Complaint" and order that a jury must determine a fair purchase price under Sections 8.7 and 8.11 of the APA. Dkt. No. 97 at 2. The defendants also seek summary judgment on the conversion and fraud claims in Count IV, alleging that the plaintiff cannot establish the elements of Wis. Stat. §§943.20(1)(b) or 1(d). Id. at 2. According to the defendants, the plaintiff cannot establish that the defendants converted

2

property from the plaintiff as a bailee or trustee or that the defendants made false representations. Id.

The plaintiff and counterclaim defendants respond that OPI—which previously and consistently had argued that the APA was null and void—cannot now retract its repudiation of the agreement and argue that a jury should adjust the purchase price. Dkt. No. 115 at 2. They maintain that the language in the APA does not apply because the parties have not mutually agreed to revisit the purchase price and that the provisions of the APA would not warrant dismissal of Counts II and III of the amended complaint. Id. With respect to Count IV, the plaintiff and counterclaim defendants say that OPI acted as a trustee when it sold the plaintiff's unsold inventory and wrongfully retained the proceeds. Id. at 3. They maintain that the fraudulent intent claim in Count IV (against defendants OPI and Daniel Reaser) survives because it does not rest on the counterclaim defendants' personal knowledge of their intent. Id.

The defendants reply that they aren't asking the court to dismiss Counts II and III; they maintain that they are asking the court to submit the question of the purchase price under the APA to the jury. Dkt. No. 119 at 2. The defendants say that they would prefer to pay "zero" to the plaintiff because the APA is void and unenforceable, but they say that if the claims go to trial, the jury should select the purchase price because Sections 8.7 and 8.11 of the APA have been triggered. Id. They deny that their failure to deliver the note was an anticipatory repudiation and argue that the failure is "immaterial." Id. at 4.

3

And they continue to insist that as to the breach of contract claims, there are no material facts in dispute. Id. at 6. As for the Wis. Stat. §943.20 claims, the defendants argue that OPI held the title to the unsold inventory, meaning that the proceeds were not the plaintiff's property and that OPI was not a trustee. Id. at 11-12. Finally, the defendants maintain that the plaintiff's owners both testified that they personally believed OPI was purchasing the assets in good faith, which they say undermines the false and fraudulent scheme element of Count IV. Id. at 14-15.

      B.    <u>Failure to Comply with Rules</u>

At summary judgment the court must determine whether the moving party has established that there are no genuine disputes as to any material facts and that it is entitled to judgment as a matter of law. In this case, the court's efforts to determine whether the moving party has established that there are no genuine disputes as to any material facts has been complicated by the defendants' failure to comply with the court's local rules. Civil Local Rule 56(b)(1)(C) (E.D. Wis.) requires a party moving for summary judgment to file, among other things, "a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law[.]" Subsection (i) of that rule mandates that that statement "shall consist of short numbered paragraphs, each containing *a single* material fact . . . ." (emphasis added). Subsection (ii) states that the moving party "may not file more than 150 separately numbered statements of fact." The Committee Comment explains that the purpose of this

4

rule is "*to limit the number of proposed statements of material fact.*" Civil L.R. 56, Committee Note at page 45 (emphasis added.) It goes on to require that "[m]oving parties are limited to *150* separately numbered proposed statements of material fact, and non-moving parties are limited to *100* separately numbered proposed statements of additional material facts." Id. (emphasis added).

The defendants—the moving parties—filed ninety-eight (98) separately numbered paragraphs of proposed factual findings, but few of those paragraphs are limited to a single material fact. For example:

> 23.   On March 17, 2020, Dan Reaser, Sr. asked Patrick McIntyre about the licensing agreement to sell Ignite the Hunt products. Reaser Dec., Ex. 4 at 2. On March 18, 2020, Patrick McIntyre responded that there wasn't yet "a documented 'licensing' or royalty agreement currently in place," but that there was "a verbal agreement regarding sales and marketing of the [Ignite the Hunt products]." Reaser Dec., Ex. 4 at 1. Patrick McIntyre further stated that [the plaintiff] was "acting as the primary distributor for the Ignite [the Hunt] products and have taken over all of the marketing/selling activity through our website and various sales channels." Reaser Dec., Ex. 4 at 1.

> 60.   However, OPI learned that [the plaintiff] sold intellectual property belonging to Ryan Wheelington and Advanced Treestand Technologies, Inc. Reaser Dec., ¶ 18. OPI discovered that [the plaintiff] did not have the right, title to, or interest in Patent No. 10,582,704. Reaser Dec., ¶ 18.

> 64.   Although not exhaustive, the below excerpt from the Inventory Valuation Summary demonstrates that the financial information provided was false, incorrect, inaccurate, and incomplete:
> > (a)   The product cost of certain items was inflated:
> > > (i)   ADTS–400 was not $148.53. Kiener Dec. ¶ 11, Ex. 100.
> > (b)   [The plaintiff] represented costs on certain items on the Inventory Valuation Summary despite [the plaintiff] obtaining them for free. The following SKUs are examples, though not necessarily exhaustive, of these

5

inflated values:

(i) Brace BDSL–24 was not $2.10. Erin McIntyre Dep. at 170:12–15; Kiener Dec., Exs. 100 & 101.

(ii) BDLX–419 was not $4.29 as represented. Rather, this SKU was $0.00 according to the cost allocation in the asset purchase agreement between Big Dog Outdoors, Inc., Kevin McLaughlin, and Big Dog Hunting, LLC dated May 24, 2017. Kiener Dec., Ex. 33, at 19.

(iii) BDDB–090 was not $9.40 as represented. Rather, this SKU was $0.00 according to the cost allocation in the asset purchase agreement between Big Dog Outdoors, Inc., Kevin McLaughlin, and Big Dog Hunting, LLC dated May 24, 2017. Kiener Dec., Ex. 33, at 20.

(iv) BDB–1080 was not $9.25 as represented. Rather, this SKU was $0.00 according to the cost allocation in the asset purchase agreement between Big Dog Outdoors, Inc., Kevin McLaughlin, and Big Dog Hunting, LLC dated May 24, 2017. Kiener Dec., Ex. 33, at 18.

66. Patrick McIntyre told Erin McIntyre that the highlighted items in Exhibit 106 "should have some cost values associated with them." Kiener Dec., Exs. 105 & 106; Erin McIntyre Dep. at 186:14–20. The highlighted items had calculated averages manually keyed in because the asset value column remained 0.00 despite a cost being added to the "calculated averages" column. Kiener Dec., Exs. 105, 106, 19 ("Erin McIntyre Dep.") at 188:1–15. Patrick McIntyre manually entered costs into the "calculated averages" column that were previously 0.00. Kiener Dec., Exs. 104, 106, Erin McIntyre Dep. at 187:7–24. Patrick McIntyre manually entered the following costs into the Inventory Valuation Summary for the following items:

(i) BDB–480 was changed to 7.10.

(ii) BDDB–011 was changed to 8.10.

(iii) BDDB–052 was changed to 7.45

(iv) BDDB–054 was changed to 9.25

(v) BDDB–058 was changed to 8.10

(vi) BDDB–061 was changed to 7.75.

(vii) BDDB–075 was changed to 8.40.

(viii) BDDB–085 was changed to 8.65.

(ix) BDDB–090 was changed to 9.40.

(x) BDFM–300 was changed to 3.35.

(xi) BDFM–500 was changed to 5.55.

(xii) BDGH–075 was changed to 1.45.

(xiii) BDGH–303 was changed to 5.15.

6

(xiv)    BDGS–2500 was changed to 11.45.
(xv)    BDPC–26 was changed to 6.10.
(xvi)    BDPC–29 was changed to 6.45.
(xvii)    BDPC–32 was changed to 6.80.
(xviii)    BDTF–040 was changed to 9.48.
(xix)    BDTF–050 was changed to 10.25.
(xx)    BDTF–060 was changed to 22.15.
(xxi)    BDTT–100 was changed to 0.92.
(xxii)    Brace BDSL–24 was changed to 2.10.
(xxiii)    FSC–414 was changed to 6.10.
(xxiv)    FSC–460 was changed to 6.65.
(xxv)    LSC–714 was changed to 6.60. Kiener Dec., Ex. 106.

67.    The only explanation that Erin McIntyre could conjure up was that those items were included in the Big Dog Outdoors' inventory [the plaintiff] purchased and that Erin McIntyre neglected to allocate the price paid for that inventory. Erin McIntyre Dep. at 191:23–25––192:1–16. Comparing the items Patrick McIntyre added a cost to with the inventory cost allocated to those items listed on the inventory valuation summary contained in the APA between Big Dog Outdoors, Kevin McLaughlin, and Big Dog Hunting, LLC dated May 24, 2017 ("BDO–BDH APA"), reveals a disturbing trend that Patrick McIntyre overinflated the cost of the items he manually entered. Kiener Dec., Exs. 106 and 33. Considering only the items that Patrick McIntyre manually entered on Exhibit 106, the cost allocated to each item in the BDO–BDH APA were as follows:
(i)    BDDB–011 (f/k/a TSDB–011) cost 1.52.
(ii)    BDDB–052 (f/k/a TSDB–052) cost 10.56.
(iii)    BDDB–054 (f/k/a TSDB–054) cost 7.08.
(iv)    BDDB–058 (f/k/a TSDB–058) cost 3.72.
(v)    BDDB–061 (f/k/a TSDB–061) cost 5.53.
(vi)    BDDB–075 (f/k/a TSDB–075) cost 0.00.
(vii)    BDDB–085 (f/k/a TSDB–085) cost 0.00.
(viii)    BDDB–090 (f/k/a TSDB–090) cost 0.00.
(ix)    BDFM–300 (f/k/a TSFM–300) cost 1.73.
(x)    BDFM–500 (f/k/a TSFM–500) cost 1.13.
(xi)    BDGH–075 (f/k/a TSGH–075) cost 1.30.
(xii)    BDGH–303 (f/k/a TSGH–303) cost 5.88.
(xiii)    BDGS–2500 (f/k/a TSGS–2500) cost 0.00.
(xiv)    BDTF–040 cost 0.00.
(xv)    BDTF–050 cost 0.00.
(xvi)    BDTF–060 cost 0.00.
(xvii)    BDTT–100 (f/k/a TSTT–100) cost 0.00.
(xviii)    FSC–414 cost 0.00.
(xix)    FSC–460 cost 0.00.

7

(xx)    LSC–714 cost 0.00. Kiener Dec., Ex. 33, at 17–21.

71.    [The plaintiff] evaded paying the proper amount of customs duties on certain shipments during 2018 and 2019. Reaser Dec., ¶ 22. On one hand, Money was providing [the plaintiff] loading records showing the cost of the goods it was importing. While on the other hand, [the plaintiff] was making false certifications to the U.S. Government by using Money to provide [the plaintiff's] customs broker with false invoices that understated the cost of the goods actually paid for. Kiener Dec., ¶ 12.

72.    In 2019, [the plaintiff] caused false invoices to be provided to the U.S. Government for every shipment of goods imported into the U.S. from China. The shipments in 2019 that [the plaintiff] did not pay the appropriate customs duties owed are associated with the following:

(i)      BD19S001. Kiener Dec. ¶ 12, Exs. i.
(ii)     BD19S002. Reaser Dec. ¶ 12, Exs. ii.
(iii)    BD19S003. Reaser Dec. ¶ 12, Exs. iii.
(iv)     BD19S004. Reaser Dec. ¶ 12, Exs. iv.
(v)      BD19S007. Reaser Dec. ¶ 12, Exs. v.
(vi)     BD19S008. Reaser Dec. ¶ 12, Exs. vi.
(vii)    BD19S009. Reaser Dec. ¶ 12, Exs. vii.
(viii)   BD19S010. Reaser Dec. ¶ 12, Exs. viii.
(ix)     BD19S012. Reaser Dec. ¶ 12, Exs. ix.
(x)      BD19S013. Reaser Dec. ¶ 12, Exs. x.
(xi)     BD19S014. Reaser Dec. ¶ 12, Exs. xi.
(xii)    BD19S015. Reaser Dec. ¶ 12, Exs. xii.
(xiii)   BD19S016. Reaser Dec. ¶ 12, Exs. xiii.
(xiv)    BD19S017. Reaser Dec. ¶ 12, Exs. xiv.
(xv)     BD19S018. Reaser Dec. ¶ 12, Exs. xv.
(xvi)    BD19S019. Reaser Dec. ¶ 12, Exs. xvi.
(xvii)   BD19S020. Reaser Dec. ¶ 12, Exs. xvii.
(xviii)  BD19S021. Reaser Dec. ¶ 12, Exs. xviii.
(xix)    BD19S022. Reaser Dec. ¶ 12, Exs. xix.
(xx)     BD19S023. Reaser Dec. ¶ 12, Exs. xx.
(xxi)    BD19S024. Reaser Dec. ¶ 12, Exs. xxi.
(xxii)   BD19S025. Reaser Dec. ¶ 12, Exs. xxii.
(xxiii)  BD19S026. Reaser Dec. ¶ 12, Exs. xxiii.

76.    Patrick McIntyre testified that he did not know what Money meant that [the plaintiff] saved $60,643.54. Pat McIntyre Dep. at 74:4–15. However, the benefit list percentage column corresponds to tariff rates and the amount in the column to the right adds up to total $60,643.54. Kiener Dec., Ex. 26. Although Patrick McIntyre

8

testified that he didn't know what the benefit list columns showed on Money's "Y19 payment list file," the "Benefit List" column denotes a number and a percentage corresponding with applicable tariff rates because on May 9, 2019, the tariff rate changed from 10 percent to 25 percent. Kiener Dec., Exs. 20, 26. Furthermore, that column does not have a percentage for the BD19S005/6" and BD19S011" rows because those shipments were imported to Canada where the tariff rate was 0 percent. Reaser Dec, Ex. 14, at 3–6. [The plaintiff] failed to pay approximately $60,000 in customs duties. Reaser Dec. ¶¶ 26–27, Ex. 14.

Well over half of the ninety-eight paragraphs resemble the above examples; they contain *multiple* statements of material fact in the same paragraph. Paragraph 66 has four statements with *twenty-five* subparts; paragraph 76 has five statements, each supported by different evidence.

The defendants' failure to limit each paragraph to a single material fact means that the defendants have far exceeded the 150-paragraph/fact limit. In its April 16, 2024 brief in opposition, the plaintiff pointed out this lack of compliance and referred to the defendants' proposed findings as "cumbersome, tedious, and difficult to respond to and likely in excess of the permitted number of proposed facts." Dkt. No. 115-1 at 1. The rules clearly state that a "party may not file any proposed statements of material fact or statements of additional fact in excess of the limit set forth in this rule unless the Court previously has granted leave upon a showing that an increase is warranted." Civil L.R. 56(b)(4). Yet in the eleven months since the plaintiff filed its opposition brief, the defendants have not asked the court for permission to exceed the number of proposed findings allowed by the rule, nor have they asked to amend their proposed findings of fact.

The court expects parties to comply with the local rules. General L.R. 1.

9

The defendants have not done so. The court will deny without prejudice the defendants' motion for summary judgment.

## II. Plaintiff and Counterclaim Defendants' Motion for Summary Judgment (Dkt. No. 146); Defendants' Unopposed Motion for Leave to File Sur-Reply Brief (Dkt. No. 183)

### A.    The Parties' Arguments

The plaintiff and counterclaim defendants filed their own motion for partial summary judgment (Dkt. No. 146), along with a brief (Dkt. No. 147), proposed findings of fact (Dkt. No. 147-1) and declarations (Dkt. Nos. 148-155). The defendants filed responses to the plaintiff/counterclaim defendants proposed findings (Dkt. No. 168), as well as 99 paragraphs of proposed additional facts (Dkt. No. 169) and an opposition brief (Dkt. No. 170). The plaintiff/counterclaim defendants filed their reply brief (Dkt. No. 175) and their opposition to the defendants' additional factual findings (Dkt. No. 176). On March 10, 2025, the defendants filed an unopposed motion to file a seven-page sur-reply brief, asserting that in its reply brief, the plaintiff had raised new issues. Dkt. No. 183.

The plaintiff/counterclaim defendants move for summary judgment on Count II of the amended counterclaim and Count IV on their amended complaint—the same count on which the defendants seek summary judgment. Dkt. No. 147 at 1. The plaintiff and counterclaim defendants argue that the court should dismiss OPI's Wis. Stat. §100.18 claim because the defendants did not plead the claim with particularity and because several of the alleged misrepresentations are not actionable. Id. at 14-18. They argue that OPI

10

asserted its claim without a good faith basis because Patrick McIntyre was not acting as Mike Coakley or A C.H. Coakley's servant in negotiating with OPI. Id. at 18-19. They argue that A C.H. Coakley cannot be held liable under an alter ego theory because there is no evidence that A C.H. Coakley completely dominated the plaintiff's finances, policy and business practices with regard to negotiations with OPI. Id. at 19-20. They insist that OPI's argument that the plaintiff and counterclaim defendants "conspired together to 'pawn off' [the plaintiff's assets" is barred by the intracorporate conspiracy doctrine. Id. at 22-23. Finally, they argue that the court should grant partial summary judgment on the plaintiff's civil theft claim under Wis. Stat. §943.21(1) because OPI unlawfully converted the proceeds derived from the sale of the plaintiff's unsold inventory. Id. at 23-29.

The defendants respond that there are disputed facts regarding the Wis. Stat. §100.18 claim in Count II of the amended counterclaim; they assert that the evidence shows that the plaintiff and counterclaim defendants made several false, deceptive and/or misleading statements when selling the assets and that A C.H. Coakley is jointly and severally liable under alter ego or agency theories of liability. Dkt. No. 170 at 2-20. With respect to Count IV of the plaintiff's complaint, asserting a claim under Wis. Stat. §895.446, the defendants argue that the plaintiff cannot demonstrate that a bailor-bailee relationship existed between OPI and the plaintiff. Id. at 20-30. They contend that the plaintiff's argument that Daniel Reaser, Sr. is somehow personally liable under that claim lacks merit because the plaintiff never has attempted to

11

establish that it can meet each requirement of the claim as to Reaser. Id. at 31.

The plaintiff and counterclaim defendants reply by accusing the defendants of being the "proverbial litigants who cry wolf." Dkt. No. 175 at 2. They don't mince words: they say that the defendants "have mined the troves of discovery to find any ostensible basis, however contrived, to justify welching on their obligations." Id. The plaintiff and counterclaim defendants suggest that the "nebulous" Wis. Stat. §100.18 claim is a money grab because OPI stiffed the plaintiff on the entire purchase price and has suffered no pecuniary loss. Id. They accuse the defendants of running a "bait and switch" by now supporting the claim through misrepresentations that did not appear in the pleadings. Id. at 3-8. As for the claims against Michael Coakley and A C.H. Coakley, the plaintiff and counterclaim defendants argue that there is no evidence that counter defendant Michael Coakley had any right to control counter defendant Patrick McIntyre's negotiations with OPI—they maintain that only the plaintiff had that right. Id. at 8-9. They argue that the amended counterclaim never alleged that Michael Coakley made misrepresentations—only that Patrick McIntyre made the misrepresentations on behalf of all the defendants. Id. at 10. They also argue that Wis. Stat. §943.20 does not require a bailor-bailee relationship; they assert that it applies to someone who has taken possession of money of another as a trustee. Id. at 12. According to the plaintiff and counterclaim defendants, keeping the net collections from the unsold inventory was theft and OPI had no basis for keeping those funds as a potential setoff. Id. at 14. Finally, they insist that Daniel Reaser, Sr. is

12

personally liable because he directed OPI to refuse to remit the money owed the plaintiff. Id. at 15.

The defendants filed an unopposed motion for leave to file a seven-page sur-reply brief, asserting that the plaintiff and counterclaim defendants raised new arguments in their reply. Dkt. No. 183 In the proposed sur-reply brief, the defendants argue that the court should disregard the new arguments in the reply brief because they were not included in the plaintiff and counterclaim defendants' brief in support of their motion for partial summary judgment. Dkt. No. 183-1. These arguments include the following: (1) OPI was not a member of the "public" as required for a claim under Wis. Stat. §100.18; (2) Patrick McIntyre's intentional misrepresentations do not have a causal connection to OPI's damages; and (3) Daniel Reaser, Sr. should be personally liable for damages awarded to the plaintiff. Id. at 2. The defendants assert that these new arguments are underdeveloped and therefore waived, but also that they fail on the merits. Id. at 2-7.

B.    Failure to Comply with Rules

The defendants filed additional proposed findings of fact that—again— violate the local rules. Dkt. No. 169. Civil L.R. 56(b)(2)(B)(ii) allows the non-moving party to file not more than 100 separately numbered additional facts, with each paragraph limited to one material fact. By the time the defendants filed their proposed findings of fact on January 3, 2025 (Dkt. No. 169), they had reason to be aware of the rule, because the plaintiff had brought it to their attention in its April 16, 2024 brief (Dkt. No. 115-1 at 1). Yet almost nine

13

months after the plaintiff brought the rule to their attention, the defendants filed proposed additional findings of fact which show no evidence that they attempted to comply with the rule. The court provides the following examples:

> 2. On September 21, 2018, the Office of the United States Trade Representative published a notice that imposed a 10% *ad valorem* duty on several products from China starting September 24, 2018, through January 1, 2019, at which time the additional duties would increase to 25 percent *ad valorem. See* Kiener Decl., Ex. 27. Prior to the 10% tariff going into effect, on or around September 18, 2018, [the plaintiff] and Mr. McIntyre conspired with Money to create false invoices that did not reflect the actual value of the goods [the plaintiff] was importing by reducing the value of the invoice for the goods associated with shipments #BD18S026, #BD18S027, #BD18S028, and #BD18S029 by certain values from a deposit of $36,935.70 that [the plaintiff] had previously paid for the goods. *See* Kiener Decl., Ex. 28 BDH036941.

Dkt. No. 169 at ¶2.

> 4. Mr. McIntyre responded, "Yes......we want to try and be as creative as we can with the new tariff. Let's try and discuss tonight. We are in a very tough cash flow situation with all of the late inventory coming in. . . . I don't know how the buyers will react to the additional tariff. . . . Can we talk tonight? 10 or 11am your time?" Kiener Decl., Ex. 28. To accomplish this, Money provided a sham mold invoice in the amount of the deposit, $36,935.70, to "reduce the tariff value by $36,935.70" and save $3,693.57 from unpaid tariffs. Kiener Decl., Exs. 29–30 (showing Money attached the sham mold invoice for $36,935.70 and sent it to Patrick McIntyre "as we talked [about] this morning"), and Ex. 31 (showing the sham mold invoice for $36,935.70). [The plaintiff] agreed to have Money carry out their plan. Kiener Decl., Ex. 32 (Mr. McIntyre responding to the sham mold invoice scam: "Yes.......we want to try and be as creative as we can with the new tariff").

Id. at ¶4.

> 10. [The plaintiff] and Money conspired to improperly reduce customs payments on [the plaintiff's] imported goods through the following methods: (1) not disclosing payments [the plaintiff] made for factory expenses; (2) not disclosing payments [the plaintiff] made to manufacture its goods through the use of bogus mold invoices; (3) over–invoicing shipments to Canada to reduce the value of the rest

of the U.S. shipments; (4) not disclosing prior payments it made, such as factory deposits; and (5) misclassifying certain goods it imported. Declaration of Daniel B. Reaser, Sr.[3], Ex. 12 at 3–6, ECF No. 99–21 at 46–51.

Id. at ¶10.

29. [The plaintiff] had a long history of being underinsured. Numerous customers stated that the limits were too low (i.e. less than adequate), which was known to [the plaintiff] at the time of negotiations and was not disclosed to OPI. *See* Kiener Decl., Ex. 46. In 2020, for example, a representative from Sportsman's Guide informed [the plaintiff] that its product liability insurance was insufficient and non–compliant with the minimum standards. *See* Kiener Decl., Exs. 46–47. Further, on August 8, 2019, [the plaintiff's] insurance agent cautioned Mr. McIntyre that the market was changing and recommended that [the plaintiff] obtain higher coverage. See Kiener Decl., Ex. 48.

Id. at ¶29.

32. On January 27, 2020, Mr. McIntyre and Mr. Coakley discussed [the plaintiff's] insurance deficiencies, with Mr. Coakley telling Mr. McIntyre that [the plaintiff] needed its sales to "DOUBLE just to cover the increase." Kiener Decl., Ex. 2 at 31. A few days later, on January 31, 2020, Mr. McIntyre pushed back on the $10 million requirement because "Big Dog has always had $5M in liability limits . . . . I'm working with my agent and broker however am getting pushback as our policy renews in 4 months and it seems to be too difficult to increase our plan in the middle of the policy term." See Kiener Decl., Ex. 50 at 1–2. However, the representative reiterated to Mr. McIntyre that they had always required a $10 million limit and reiterated that [the plaintiff] was non–compliant. Kiener Decl., Ex. 50.

Id. at ¶32.

34. In fact, on February 24, 2020, [the plaintiff's] insurance agent asked Mr. McIntyre if he wanted to proceed with the $10 million limit because they were working on the renewal policy. Kiener Decl., Ex. 49. Yet, instead of renewing the policy and increasing the limit as indicated (and expressly required), the insurance agent emailed Sportsman's Guide that it would be "very difficult, this late in the policy period, to suddenly increase limits to $10m for that short of a period." Kiener Decl., Ex. 46. Instead of obtaining the minimum requirements, [the plaintiff] deliberately kept their insurance limits

low until closing the APA and then secured a scant $1 million/$2 million policy, a policy far below the $10 million minimum requirement. Kiener Decl., Exs. 51 & 52.

Id. at ¶34.

49. [The plaintiff] represented that it owned Patent No. 10,582,704 filed on January 9, 2018, Application No. 15/866,114, and issued on March 10, 2020. ECF No. 98, ¶ 17, ECF No. 98–7, at 5. However, OPI learned that [the palintiff] sold intellectual property belonging to Ryan Wheelington and Advanced Treestand Technologies, Inc. Reaser Dec., ¶ 18. OPI discovered that [the plaintiff] did not have the right, title to, or interest in Patent No. 10,582,704. ECF No. 98, ¶ 18.

Id. at ¶49.

57. Patrick McIntyre told Erin McIntyre that the highlighted items in Exhibit 106 "should have some cost values associated with them." Email dated March 25, 2020, ECF No. 99– 44; Inventory Valuation Summary, ECF No. 99–45; ECF No. 99–22 at 186:14–20. The highlighted items had calculated averages manually keyed in because the asset value column remained 0.00 despite a cost being added to the "calculated averages" column. Email dated March 25, 2020, ECF No. 99–44; Inventory Valuation Summary, ECF No. 99–45, ECF No. 99–22 at 188:1–15. Patrick McIntyre manually entered costs into the "calculated averages" column that were previously 0.00. Email dated March 25, 2020, ECF No. 99–44; Inventory Valuation Summary, ECF No. 99–45; ECF No. 99–22 at 187:7–24. Patrick McIntyre manually entered the following costs into the Inventory Valuation Summary for the following items:

    (i)       BDB–480 was changed to 7.10.
    (ii)      BDDB–011 was changed to 8.10.
    (iii)    BDDB–052 was changed to 7.45.
    (iv)    BDDB–054 was changed to 9.25.
    (v)      BDDB–058 was changed to 8.10.
    (vi)    BDDB–061 was changed to 7.75.
    (vii)   BDDB–075 was changed to 8.40.
    (viii)  BDDB–085 was changed to 8.65.
    (ix)    BDDB–090 was changed to 9.40.
    (x)      BDFM–300 was changed to 3.35.
    (xi)    BDFM–500 was changed to 5.55.
    (xii)   BDGH–075 was changed to 1.45.
    (xiii)  BDGH–303 was changed to 5.15.
    (xiv)  BDGS–2500 was changed to 11.45.

16

      (xv)     BDPC–26 was changed to 6.10.
      (xvi)    BDPC–29 was changed to 6.45.
      (xvii)   BDPC–32 was changed to 6.80.
      (xviii)  BDTF–040 was changed to 9.48.
      (xix)    BDTF–050 was changed to 10.25.
      (xx)     BDTF–060 was changed to 22.15.
      (xxi)    BDTT–100 was changed to 0.92.
      (xxii)   Brace BDSL–24 was changed to 2.10.
      (xxiii)  FSC–414 was changed to 6.10.
      (xxiv)  FSC–460 was changed to 6.65.
      (xxv)   LSC–714 was changed to 6.60.
      Highlighted Inventory Summary, ECF No. 99–46.

Id. at ¶57.

Just as they disregarded 150-fact limit in the proposed findings of fact they filed in support of their summary judgment motion, the defendants have disregarded the 100-fact limit in the additional findings of fact they filed in support of their opposition to the plaintiff/counterclaim defendants' motion for summary judgment. They have not asked the court for leave to file proposed additional findings in excess of the limit stated in the rule or attempted to confine themselves to a single, material fact per paragraph.

The court has the authority to allow a party to amend its proposed findings of fact to bring those proposed findings into compliance with the court's rules. It could address the defendants' failure to comply with the local rule by allowing the defendants to amend their additional proposed findings of fact. But in the case of the plaintiff/counterclaim defendants' motion for summary judgment, it is not only the defendants who have ignored the rules of litigation. As stated above, the defendants have filed an *unopposed* motion to file a surreply brief, arguing that the plaintiff/counterclaim defendants raised

new arguments in their reply brief. Dkt. No. 183. It appears that the plaintiff/counterclaim defendants agree with this argument, because the defendants state in the motion that the plaintiff/counterclaim defendants "have agreed" not to oppose the defendants' motion for leave to file a surreply. Id.

A court abuses its discretion when it denies a party a chance to respond to arguments or facts raised for the first time in a reply brief in support of a motion for summary judgment. See, *e.g.*, Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC, 950 F.3d 959, 968-69 (7th Cir. 2020) (citations omitted). So if the court were to allow the defendants to amend their additional findings of fact to bring them into compliance with the court's local rules, it also would be required to grant their motion for leave to file a surreply so that they could have an opportunity to respond to the new facts or arguments that the plaintiff/counterclaim defendants filed in their reply brief—without any explanation from the plaintiff/counterclaim defendants about why they raised new arguments for the first time in their reply brief and why they could not have raised those arguments in their initial brief, in a case that has been pending for almost four years.

Given the avalanche of pleadings the parties have filed, and the fact—as the court will discuss below—that this case is headed to trial, the court is not inclined either to allow the defendants to amend their proposed additional findings of fact or to allow the parties to extend summary judgment briefing by agreement. The parties already have filed hundreds of documents and it has been a rocky road. The court will deny *without prejudice* the defendants' motion

18

for partial summary judgment (Dkt. No. 96), the plaintiff/counterclaim defendants' motion for partial summary judgment (Dkt. No. 146) and the defendants' motion for leave to file a surreply (Dkt. No. 183).

What the summary judgment briefing has revealed, however, is that the parties are in a different position today than they were when they raced to the courthouse in the summer of 2021. At that point, and for some time after, the defendants adamantly maintained that the APA was null and void. Now, for the first time, both parties agree that language in the APA allows the parties to revisit the purchase price "as mutually agreed by the parties." Dkt. No. 119 at 2-3. (Their disagreement lies in whether such language must be triggered and/or is permissive or mandatory). The defendants also point to Section 15.3 of the APA, which says the parties may mutually amend the agreement. Dkt. No. 119 at 3, n.1. Now, although the defendants still would prefer to pay "zero," they are asking the court to instruct a jury to determine the purchase price under Section 4 of the APA that they previously had strenuously argued was null and void. Dkt. No. 119 at 2. Both parties have made admissions about their conduct relating the APA—admissions that could be admitted as evidence at trial. And this case *is* headed for trial. Neither party has moved for summary judgment on all claims and, after the court granted multiple extensions, the deadline for filing dispositive motions has passed.

In denying both partial motions for summary judgment *without* prejudice, the court has not addressed the merits of either motion. Nor has it concluded that a jury must determine the purchase price. It observes only

what the briefing of those motions has revealed, and what the court has discussed above: that the landscape of the case is different now than it was when the plaintiff filed the complaint. This is an inflexion point that presents the parties with an opportunity to stanch the bleeding. Before the court will consider allowing the defendants to amend their proposed findings of fact, or allowing either party to revise the briefing, or allowing (heaven forfend) additional briefing, the court will require the parties to seriously consider mediation or some other form of alternative dispute resolution. If there ever was a time for the parties to stop the name-calling and accusations and have a serious discussion about ending the warfare, it is now. Alternative dispute resolution could avoid the expense of further briefing and the greater expense of what likely will be a lengthy and hard-fought trial.

## IV.    Conclusion

The court **DENIES WITHOUT PREJUDICE** the defendants' motion for partial summary judgment. Dkt. No. 96.

The court **DENIES WITHOUT PREJUDICE** the plaintiff/counterclaim defendants' motion for partial summary judgment. Dkt. No. 146.

The court **DENIES WITHOUT PREJUDICE** the defendants' unopposed motion for leave to file surreply brief. Dkt. No. 183.

The court **ORDERS** that before the hearing date scheduled below, the parties must meet and confer to discuss logistics for participating in some form of alternative dispute resolution, either with a magistrate judge or some other appropriate neutral evaluator. The court **ORDERS** that at the hearing

scheduled below, the parties should be prepared to advise the court of the dates and times of their meet-and-confer sessions and any logistics upon which they have agreed. If the parties are unable to agree to participate in some form of alternative dispute resolution, the court will use the hearing to encourage the parties to do so and to discuss other possible next steps.

The court **ORDERS** that the parties must appear for a status conference before on **April 18, 2025 at 1:30 PM** in Courtroom 225 of the U.S. Courthouse and Federal Building, 517 E. Wisconsin Ave., Milwaukee, WI 53202.

Dated in Milwaukee, Wisconsin this 20th day of March, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**